N. MOSES, Appellant,

v.

Mary Elizabeth ADAMS, Appellee.
No. 6935.

Court of Civil Appeals of Texas.

Beaumont.

May 2, 1968.

Rehearing Denied May 22, 1968.

Orgain, Bell & Tucker, Beaumont, for appellant.

Patterson, McDaniel, Moore & Browder, Houston, Richard N. Evans, Beaumont, for appellee.

STEPHENSON, Justice.

This is an action for damages arising out of an automobile collision. Trial was by jury and judgment was for plaintiff upon the issues. The parties will be referred to here as they were in the trial court.

■ Defendant's first point of error is based upon jury misconduct. In passing upon this point of error, we must be guided by the rules of law set forth in several Supreme Court decisions. It is never permissible for a juror to preserve or destroy his verdict by testifying to the mental processes by which he reached his verdict. Barrington v. Duncan, 140 Tex. 510, 169 S.W. 2d 462.

■ Whether the jury misconduct occurred was a question of fact for the trial court to determine. No findings of fact nor conclusions of law were requested or made. The trial court, by overruling defendant's motion for new trial, impliedly found that the misconduct did not occur. In view of this implied finding, we must consider the evidence heard on the motion for new trial in its most favorable light to upholding that ruling. Compton v. Henrie (Tex.) 364 S.W.2d 179. Also, "if the evidence is conflicting on the question as to whether or not the misconduct actually occurred, the decision of the trial court either way on that question should be accepted as final." Barrington v. Duncan, supra.

In response to the general damage issue No. 33, the jury answered $17,500.00. The past medical issue No. 35 was answered

$950.00. The future medical issue No. 37 was answered $14,000.00. It is defendant's contention that the jury agreed to limit the total amount of damages to $17,500.00, and this included the past and future medical. Defendant called four of the jurors to testify on the hearing of the motion for new trial, and although the trial court permitted these witnesses to answer many questions involving their mental processes, such testimony gave support to defendant's contention. However, plaintiff called one of the jurors as a witness who unequivocally testified: That no juror made the statement that the answer to issue No. 33 included past and future medical expenses. That the jury did not agree that plaintiff's total recovery would be $17,500.00. That the jury decided each damage issue separately and did not vote on them as a total. That when the question was asked by a juror as to whether issue No. 33 included the medical expense, they were told, point blank, that it did not.

An issue of fact was raised by this conflicting testimony, which was resolved in favor of plaintiff by the implied finding by the trial court that the misconduct did not occur. This court is bound by such finding. The point is overruled.

Defendant's second point of error complains of the action of the trial court in overruling its objection to Special Issue No. 33, the objection reading as follows:

The court erred in failing to sustain Paragraph 13 of defendant's objections to Special Issue No. 33 of the charge of the court, which was:

"Defendant excepts and objects to Special Issue No. 33 of the charge of the Court since it constitutes a comment upon the weight and sufficiency of the evidence by the Trial Court, in that it instructs the jury that plaintiff herein has in fact received injuries, which is a disputed issue of fact, and this Defendant does not agree to trial by consent."

Special Issue No. 33 read as follows:

What sum of money, if any, do you find from a preponderance of the evidence, if paid now in cash, would fairly and reasonably compensate Mary Elizabeth Adams for the injuries, if any, which you believe from a preponderance of the evidence she has sustained as a direct and proximate result of the occurrence in question?

In answering this issue, you are instructed that you may take into consideration the following elements of damage, if any, and none other:

(a) Physical pain, if any, and mental anguish, if any, which you believe from a preponderance of the evidence Mary Elizabeth Adams has sustained since the date of the occurrence up to the present time as a direct and proximate result of the occurrence in question.

(b) Physical pain, if any, and mental anguish, if any, which you believe from a preponderance of the evidence Mary Elizabeth Adams, in reasonable probability, will suffer in the future and after this date as a direct and proximate result of the occurrence in question.

(c) Loss of earnings, if any, which you believe from a preponderance of the evidence that Mary Elizabeth Adams has sustained since the date of the occurrence up to the present time as a direct and proximate result of the occurrence in question.

(d) Loss of earning capacity, if any, which you believe from a preponderance of the evidence that Mary Elizabeth Adams, in reasonable probability, will sustain in the future from and after this date as a direct and proximate result of the occurrence in question.

Answer by stating the amount, if any, in dollars and cents, if any.

# 134

It is argued by defendant that no issue was submitted as to whether plaintiff was injured in the accident and, therefore, is a comment upon the weight of the evidence in that it assumes plaintiff received an injury.

█ Rule 274 Texas Rules of Civil Procedure provides in part that a party objecting to a charge must point out distinctly the matter to which he objects and the grounds of his objection. Rule 279 T.R.C.P. provides in part that the failure to submit an issue shall not be deemed grounds for reversal, unless its submission, in substantially correct wording, had been requested in writing, provided, however, that objection to such failure shall suffice if the issue is one relied upon by the opposing party. The objection made by defendant does not point out distinctly the grounds now relied upon, and no specific objection is made to the failure of the trial court to submit the issue as to injury. We hold the failure in each respect results in waiver. Associated Indemnity Corp. v. Kujawa, 153 Tex. 314, 268 S.W.2d 122. In Texas & Pacific Railway Company v. Van Zandt, 159 Tex. 178, 317 S.W.2d 528, the defendant both objects to the trial court's failure to submit an issue as to injury, but also submitted an issue to the trial court which was refused. The Supreme Court held this to be reversible error. The facts pointed out clearly distinguish the Van Zandt case from the present case. In any event, the record in this case, some of which will be discussed in the next point of error, shows it is undisputed that plaintiff was involved in an automobile collision and received an injury. The point is overruled.

█ Defendant next contends the verdict of the jury is grossly excessive and prays for either a new trial or a remittitur. The determination of the amount of damages lies primarily with the jury, and there is no set formula whereby the exact amount can be measured. This court is given authority to control and revise the amount under Rule 440 T.R.C.P. Precedents are help-ful in determining whether damages awarded for similar personal injuries are or are not excessive or inadequate.

█ The evidence showed: Plaintiff is a 26-year-old single woman with a life expectancy of 40 years. She was a passenger in the front seat of an automobile which was standing still when it was struck from the rear by a pickup truck driven by defendant. The impact was severe and plaintiff's automobile was knocked about 40 feet forward. Plaintiff was thrown backwards and then forward. Her glasses were ripped off and she was thrown to the floor. Her head hit the frame of the windshield, and her legs hit the air conditioner. The front end of the pickup truck and the rear end of plaintiff's car were both severely damaged. Immediately after the impact, plaintiff had a severe headache and a ringing in her head. She experienced a severe strained feeling along the right side of her neck and down her shoulder blades, and numbness over the back part of her arm on down into her hands. Plaintiff was taken to the hospital in an ambulance, x-rayed and given medication. She remained in the hospital four or five hours. January 27, 1964, five days after the accident, she saw Dr. E. J. Tucker, an Orthopedic Surgeon in Houston. Dr. Tucker testified: That he made a physical examination, neurological examination, and x-ray examination of plaintiff's cervical spine in his office. He found that she had limitation of motion of the cervical spine on extreme rotation. She complained of pain when her cervical spine was manipulated. To Dr. Tucker, the presence of pain and limitation of motion was an essential part of his diagnosis. He found that her left arm showed a decrease in the dynamometer reading on the right side as compared to the left side, and there was diminished or absence of triceps reflex of the right hand, with some diminished sensation in the right hand. This signified to Dr. Tucker that there was a weakness in the muscles of her right arm at that particular time that could have been directly caused from a sprain that

she had to her shoulder or trauma to her shoulder or arm, or it could have been due to a referred nerve root pain. X-rays were taken that showed a questionable narrowing of the fourth cervical interspace. Dr. Tucker's diagnosis was that plaintiff had an injury to the cervical muscles with a referred nerve root pain to the right arm. In answer to a hypothetical question, Dr. Tucker testified that the condition he found in plaintiff, was, in his opinion, caused by the accident in question. He prescribed as treatment, physiotherapy, such as cervical traction, and exercises of the muscles of her spine, medication and muscle relaxants. Dr. Tucker saw plaintiff February 10, 12, 17, 19, 24 and 27, treating her primarily through cervical traction. Dr. Tucker examined plaintiff May 18, 1964 when she had about the same complaints. He found she, at that time had some increased muscle spasm in the cervical muscles and arthritic changes starting in her dorsal spine. Dr. Tucker saw her September 11, 1964, January 27, 1965, June 11 and 25, 1965, July 23, 1965 and July 25, 1966. This last examination revealed that she had pain on pressure over the 7th and 8th dorsal vertebrae, an overlay of muscle spasm and some early arthritic changes in the dorsal spine.

Dr. Ervin Wiley Biles, a Radiologist testified: He saw plaintiff July 25, 1966 and examined her entire spine. The x-ray films taken that day showed plaintiff's cervical vertebrae were unusually straight so the normal lordotic curvature was lost. There was limitation of motion of the cervical vertebrae and these two findings indicated muscle spasm. The condition found in the x-rays was calculated to cause plaintiff pain and discomfort.

Dr. Ben Lerner of Houston testified: He had been treating plaintiff since October, 1965 to the date of the trial in November, 1966. After stating his examination and findings, his diagnosis was that plaintiff had headaches due to a concussion syndrome when she hit her head; that she had an injury to her left knee and left foot; that she had emotional disturbance, depression and loss of confidence; that she had a decrease of the space of the fourth cervical disc, nerve root irritation and pressure on the ulna nerve; that she had experienced aggravation of the hypertrophic changes in her dorsal spine and increased dorsal curvature. He further testified plaintiff's medical problems were of a permanent nature. That plaintiff had 35 to 50% disability in terms of ability to perform work and being a housewife. That plaintiff would have more trouble in the future, and would incur $500 or $600 a year for future medical expense the rest of her life.

Plaintiff testified that at the time of the trial: She was still having severe headaches, a tired feeling, tension on the right side of her neck, burning in her shoulder blades, and numbness in her hand and arm. She was taking physical therapy four times a week, diathermy treatments three times a week and medication when she needed it. She was still using the traction device, and was still nervous.

There was a great deal more testimony including that of an employer for whom she had worked both before and after the accident, describing in detail the difference in her work. All of this testimony supported the finding by the jury as to the amount of the damages. We do not find the damages to be excessive when compared with cases involving similar personal injuries. The point is overruled.

Affirmed.