Emmett O. COLEMAN, Petitioner,

v.

HUDSON GAS AND OIL CORPORATION,
Respondent.

No. B–1787.

Supreme Court of Texas.

June 17, 1970.

Rehearing Denied July 15, 1970.

Waldman & Smallwood, Fred J. Rafes and Carl Waldman, Beaumont, for petitioner.

Barnes & Barnes, Robert E. Barnes, Beaumont, for respondent.

REAVLEY, Justice.

Emmett O. Coleman, the employee of a contractor, was injured while performing repair work for Hudson Gas & Oil Corporation. In this suit for damages, Coleman was given a partially favorable verdict by the jury, but the trial court rendered judgment for Hudson. The court of civil appeals affirmed. 444 S.W.2d 807. And we affirm.

At the time of his injury, on February 16, 1959, Coleman was employed by Bannister Construction Company. Bannister, an oil and gas repair firm, had been engaged by Hudson to perform repairs on a high pressure gas system located on Hudson's leasehold at Big Hill, Jefferson County, Texas. One of the repairs required the removal of an adjustable choke from a high pressure line, which meant that the gas pressure had to be dissipated in that line.

To do this, the valves at the wellhead were first closed so that gas no longer flowed into the line. Then, on the other end of the unit, downstream from the choke, a bleeder valve was opened to let the gas remaining in the line escape. The

gas was in fact competely bled from the line downstream from this particular adjustable choke. But when Coleman and his co-workers were in the process of unscrewing that choke, the inner part and wheel blew out and struck Coleman in the face. Apparently the gas had frozen at the choke, and high pressure gas had been retained behind that point.

The appeal at hand follows the second trial of this suit. At the end of the first trial, an instructed verdict was granted for Hudson. On appeal the court of civil appeals reversed and remanded, saying that there were issues of fact as to Hudson's negligence. 403 S.W.2d 482. The application for writ of error was refused, no reversible error. In this second trial, though finding adversely to Coleman on other contentions of negligence, the jury found in favor of him in response to the following four issues:

No. 6: "Do you find from a preponderance of the evidence that on the occasion in question the defendant, Hudson Gas & Oil Corporation, had agreed to bleed the gas from the said unit or lines thereof?"

No. 7: "Do you find from a preponderance of the evidence that defendant failed to remove the gas from the said unit or lines thereof?"

No. 8: "Do you find from a preponderance of the evidence that such failure, if any, of defendant to remove the gas from said unit or lines thereof, if you have so found, was negligence?"

No. 9: "Do you find from a preponderance of the evidence that such negligence, if any, was a proximate cause of the accident in question?"

Issues 8 and 9 were submitted conditionally. The jury answered "We do" to all four of these issues.

If the question is limited to the defendant's responsibility for the consequences of the danger of the high pressure gas as it existed when the Bannister crew came on the lease, inasmuch as that was a danger which the plaintiff and all persons present appreciated, defendant owed no further duty to the plaintiff and could not be liable. McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954).

The problem arises when the court of civil appeals in its opinion states that the evidence shows "defendant undertook the job of bleeding the line," and yet affirms judgment for the defendant because the plaintiff failed to "negative no duty."

In passing, we might question the usefulness of speaking as though there were some special rule in the owner, occupier, general contractor-invitee field requiring the invitee to "negative no duty." Any plaintiff must prove the existence and violation of a legal duty owed to him by the defendant in order to establish tort liability. So the question here, to begin with, is the nature of that duty. Is it the duty of an occupier (Hudson) to protect an invitee (Coleman) from a latent danger (high pressure gas in the system to be repaired)? If so, since in this case Coleman fully appreciated the danger, Hudson owed him no duty. However, if Hudson undertook to bleed the high pressure gas line, it would be required to act with care. If that was the fact, the duty of the defendant was something other than that owed by an occupier with respect to dangerous conditions of the premises.

Hudson was represented on the scene by Robert D. Sharp, called a "switcher," whose duties included gauging the tanks, changing charts on flow meters, and seeing that routine maintenace was done on the lease. It was Coleman's testimony that Sharp conducted the pressure bleeding operation and told the Bannister employees what to do up to the point where Coleman was injured. If Sharp engaged in any such activity, he owed a duty of care to Coleman. If he acted negligently while in the course of his employment, thereby injuring Coleman, the defendant would be

liable. Montgomery Ward & Co. v. Scharrenbeck, 146 Tex. 153, 204 S.W.2d 508 (1947).

A study of the record reveals a conflict of testimony as to whether Sharp undertook the job of bleeding the line. Sharp testified that it was the Bannister crew, under their foreman Morris, who opened the bleeder valve and conducted all of the operations in the attempt to eliminate the gas pressure. Another member of the Bannister crew, Clark L. Currie, testified that Morris was in charge of the bleeding of the line and that Sharp did not participate. No special issue was submitted to resolve this fact issue.

Whatever was Sharp's conduct, his duty to plaintiff was no more than a duty to act with care. There could be no liability without a finding of negligence. The only jury finding of negligence was in response to Special Issue No. 8 with respect to defendant's failure "to remove the gas from said unit." The plaintiff argues that this finding should be construed to mean that the bleeding of the line was conducted negligently *by Sharp*. Assuming that his issue would not be too general if we knew that Sharp conducted the operation, it cannot be construed to include a determination of that question also.

The plaintiff did not plead negligence in the conduct of a bleeding operation; he alleged that the defendant had agreed to do the bleeding of the line and "[i]n leaving gas in the said unit or lines thereof and failing to perform as per the agreement," defendant was negligent. We read Special Issues 6 through 9 to fit the pleadings; they only say that the defendant was negligent because the gas was not removed from the line. Under these findings we assume that Sharp did nothing with respect to bleeding the gas, despite the contractual obligation to do so. This is not a case of Coleman coming upon the lease with the belief that Hudson had already performed its promise and removed the gas from the line. If Sharp did nothing with respect to bleeding the gas, Coleman was present and

fully cognizant of the fact. Under those facts, we are back where we began: with a high pressure gas system the danger of which Coleman appreciated. In the absence of further duty, the negligence finding is of no effect. The law does not make Hudson an insurer because of its contractual duty. In Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609 (1950) the basis of the landlord bank's liability was its contractual duty of repair under terms of a lease. It was said there: "Under these circumstances Bank was under a duty to those, *without prior notice of defects*, entering as business guests or invitees of the tenants to use ordinary care to keep the entrance to the passageway in a reasonably safe condition for their use." (Emphasis added.) 235 S.W.2d 618.

We are foreclosed from assuming that Sharp froze high pressure gas behind the adjustable choke by negligently bleeding the line, because there is neither pleading nor jury finding to that effect.

The lower courts were correct in holding that plaintiff failed to secure jury findings which would support judgment in his favor. Those judgments are affirmed.