**TEXACO, INC., and D. J. (Curley) Sadler, Appellants,**

v.

**B. G. FORESTER and Evangeline Well Service Inc., Appellees.**

No. 7097.

Court of Civil Appeals of Texas, Beaumont.

April 30, 1970.

On Rehearing May 28, 1970.

Second Motion for Rehearing Overruled June 18, 1970.

Strong, Pipkin, Nelson, Parker & Powers, Beaumont, for appellants.

Weller, Wheelus, Green & Brocato, Robert Q. Keith, Beaumont, for appellees.

STEPHENSON, Justice.

This is an action for damages for personal injuries. Plaintiff, Forester, brought this suit against defendants, Texaco, Inc. and its employee, Sadler, and also against defendant, Evangeline Well Service, Inc. (hereinafter called Evangeline). Trial was by jury, and judgment was rendered for plaintiff against Texaco, Inc. and Sadler only, and that Texaco, Inc. and Sadler recover nothing from Evangeline on their cross action.

Plaintiff made the following allegations: That he was an employee of Gulf Coast Machine & Supply Co. (hereinafter called Gulf Coast). That his injury was received on a well site owned or leased by Texaco, Inc. That Evangeline was conducting drilling operations under a contract with Texaco, Inc. That Evangeline purchased certain equipment in such drilling operations from Gulf Coast, and called upon plaintiff to install such equipment as a Gulf Coast employee. That his cause of action, in substance, against Texaco, Inc. and Sadler was based upon Sadler's negligence in kicking a rotary bushing through a hole in the drilling platform, causing it to fall upon plaintiff working below the drilling platform, proximately causing the injury and damages complained of. That plaintiff's cause of action against Evangeline, in substance, was failure to furnish him a safe place to work. Texaco, Inc.'s cause of action against Evangeline was upon a written contract for indemnity and contribution.

The jury made the following findings in essence: That Sadler while acting in the course and scope of his employment with Texaco, Inc., kicked the rotary bushing through the hole, which was negligence and a proximate cause and also the sole cause of plaintiff's injury. That Evangeline's failure to cover the hole was negligence and a proximate cause of plaintiff's injury. That plaintiff knew and appreciated the danger of working under the rig floor with the rotary hole open. The jury failed to find plaintiff guilty of acts of contributory negligence or that this was an unavoidable accident.

Texaco, Inc.'s and Sadler's first point of error is that the trial court erred in rendering judgment against them because of the jury finding that plaintiff knew and appreciated the danger of working under the open rotary hole. It is the two different types of causes of action involved in this case which lead to the confusion. As stated above, plaintiff's cause of action against Texaco, Inc. and Sadler is based upon "active" negligence as that term is used by Associate Justice Joe Greenhill in his article which appeared in The State Bar Journal, Vol. 28, No. 1, dated January 22, 1965. The "activity" which the jury found to be negligence and a proximate cause was Sadler's kicking the rotary bushing through the hole. After these findings, Texaco, Inc. and Sadler had the burden of securing a finding of contributory negligence on the part of plaintiff, in order to avoid liability, which they failed to do. The finding by the jury that plaintiff knew and appreciated the danger of working under the open rotary hole, was not a finding of negligence on plaintiff's part. Justice Greenhill points out that, even

though in Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup., 1963) it is not stated the "no duty" doctrine applies to both "conditions" and "activities", the "activities" contemplated under Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.Sup., 1963) must be continuous and localized. The "activity" (kicking the rotary bushing through the hole) was neither continuous nor localized.

If plaintiff's cause of action against Texaco, Inc. and Sadler had been one based upon the failure to furnish plaintiff a safe place to work, then we would be faced with a different situation. In this state, the occupier of land and premises, as to invitees, has the duty to keep the premises in a reasonably safe condition, together with a duty to inspect the premises to discover defects. The occupier has a duty to protect his invitees from dangers of which he, the occupier knows, or which, because of his duty to inspect, he should know. If the premises are unsafe, and the occupier has not remedied the defect, the duty of the occupier is to warn the invitee. The invitee may assume the premises are in good condition, and is under no duty to inspect them for defects. The occupier is not obligated to the invitee to both warn and remedy the defect, but may do either. If the defect is "open and obvious" or if the invitee knows and appreciates the danger of the defect, then the occupier is under "no duty" to the invitee. But, as stated above, plaintiff's cause of action against Texaco, Inc. and Sadler was not based upon a "condition" and the finding that plaintiff knew and appreciated the danger of working under the rotary hole does not prevent his recovery as against them. Texaco, Inc. and Sadler still owed plaintiff a duty not to harm him. The defenses available under Delhi-Taylor Oil Corporation v. Henry, 416 S.W.2d 390 (Tex.Sup., 1967), and McKee v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1953), have no application to the present case. The first point of error is overruled.

The second point of error of Texaco, Inc. and Sadler is that there is a fatal conflict in the jury findings that Evangeline's negligence was a "proximate cause" and Sadler's negligence was the "sole cause" of plaintiff's injury. We have considered this point in accordance with the rule stated by the Supreme Court of Texas in Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985 (1949).

We have concluded that the answers to these two special issues have no bearing upon the outcome of this case. If the trial court had determined there was a conflict and returned the jury for further consideration, the same judgment would have been entered in this case regardless of any change or changes the jury might have made. First, the jury had found Sadler's negligence to be a proximate cause of plaintiff's injury, and plaintiff would have been entitled to judgment against Texaco, Inc. and Sadler regardless of how the jury answered the sole cause issue. Likewise, if the jury had changed its answer to the issue as to proximate cause by Evangeline, Evangeline would have still been entitled to judgment, inasmuch as the jury finding that plaintiff knew and appreciated the danger constituted a finding of "no duty" on the part of Evangeline. There is no combination of answers to the issues claimed to be in conflict which would have required the entry of a different judgment. The point is overruled.

Texaco, Inc.'s and Sadler's next points of error complain of the excessiveness of the verdict and the inclusion of loss of wage earning capacity as an element of damages. In arriving at their verdict of $75,000.00, the jury was instructed to consider only past and future pain and suffering and loss of future wage earning capacity. We view the evidence in its most favorable light supporting the award.

Plaintiff was 36 years old at the time of the injury and almost 39 at the time of trial. At the time of trial he had been

with Gulf Coast about 9 years in wellhead sales and service. Previously he had done similar work for National Supply for 8 years. Plaintiff is a self-taught draftsman and had machinist training in high school. He took typing in school and could use the touch system. Plaintiff's job involved sales and then installation and service of the equipment. His job required good salesmanship as well as a mechanically minded man. Plaintiff received the injury complained of to his right hand July 17, 1965, when the 150 pound cast iron bushing fell through the rotary hole some 15 feet, striking the top of his hand and splitting it open into the palm. The leaders were cut and mangled and the middle finger was hanging by a thread. Plaintiff was carried to the hospital with a great deal of delay because of car trouble. Plaintiff received no pain shot because no one was present to authorize it for two or three hours. Dr. Bessell, an orthopedic surgeon treated plaintiff in the emergency room, and found, as he described, a crushing injury to the hand with multiple lacerations and partial dislocation to one of the joints of the ring finger, the wounds extending to the top of the hand. One of the tendons was literally up-rooted out of the bone. The wound was cleaned surgically and a piece of wire was inserted to tack the tendon back in place and the finger was then put back into place. Plaintiff remained in the hospital several days, and the wires were removed sometime later. He developed an infection around the wire and was placed on antibiotics. By September, 1965, plaintiff had developed a knuckle joint and lacked 35 degrees extension on the middle finger, 30 degrees on the little finger and about 70 degrees on the ring finger. By February 12, 1968, he had reached maximum recovery and still had pain at the wrist with extreme extension. He lacked 25 and 30 degrees of extention of the middle and ring fingers and 20 degrees of the little finger. Plaintiff can close his fingers to make a fist, but his problem is his inability to open or extend his fingers fully. His injury was confined to his hand and there are no findings or treatment to the thumb or index finger. Dr. Bessell stated there was some disability to plaintiff's hand without stating a percentage, and that it is permanent. This doctor stated the main purposes of hands are grip, pinch and hook, and that plaintiff has all three, but that plaintiff could lift more before and might have some discomfort in lifting maximum weights. Plaintiff testified: His hand aches and throbs in cold weather. The knuckle and middle joint of his ring finger are always sore, and it hurts certain joints in his fingers when he grips. His ring finger is cold all of the time and his hand cramps while driving on long trips.

■ Plaintiff returned to work for Gulf Coast in less than two weeks from the date of his injury, and was still employed by that company on the date of trial. Plaintiff's immediate supervisor testified: That plaintiff had been a good experienced man in the wellhead sales and service division, but that because plaintiff could not do the lifting required, after his injury, a new job was created for him in the machine shop and warehouse. That plaintiff's new job included inspections, odd jobs, and making sketches. That such job was not really necessary and in the event of a reduction, plaintiff would be first to go. That a tentative date has been set for Gulf Coast to go out of the wellhead business in which event, in all probability, plaintiff would not be employed. That if plaintiff had stayed in sales he would have had an opportunity to District Manager, to Division Manager and to Sales Manager. At each step, he could have made more money and a chance at larger sales. In sales, plaintiff was paid a salary and a commission on his sales and fringe benefits. In his new job he could be paid only on the hourly basis. There was evidence to support the action of the trial court in

including loss of wage earning capacity in its charge.

The record shows that plaintiff's salary when injured was $600.00 per month, plus a commission of 3% on all sales and fringe benefits. On his new job, he was paid $2.-50 to $2.75 per hour, with a chance to make overtime. At the time of the trial, plaintiff was paid $3.25 to $3.50 per hour, plus overtime, and he had averaged $932.00 per month the first ten months of 1968.

The determination of the damages lies primarily with the jury, and there is no set formula whereby the exact amount can be measured. Precedents are helpful in determining whether damages awarded for similar personal injuries are or are not excessive or inadequate. This court is given authority to control and revise the amount under Rule 440. Moses v. Adams, 428 S.W.2d 131 (Beaumont Tex. Civ.App., 1968, error ref. n. r. e.). In order to grant a remittitur there need not be any proof of passion or prejudice or that the jury was improperly motivated. Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835 (1959). The excessiveness of the jury verdict shocks our sense of justice. Under the circumstances of this case, $60,000.00 would be reasonable compensation. Unless plaintiff, within two weeks after the filing of this judgment, files a remittitur to bring the amount of the judgment to $60,000.00, this case will be reversed and remanded for a new trial. If the remittitur is executed and filed with this court within said time, the judgment will be affirmed for the balance, and the court cost divided one-fifth to plaintiff and four-fifths to Texaco, Inc. and Sadler.

The judgment is affirmed conditionally.

KEITH, J , not sitting.

## ON REHEARING

STEPHENSON, Justice.

Texaco, Inc. and Sadler raised points of error in their supplemental brief complaining of the action of the trial court in denying them contribution and indemnity under their cross action against Evangeline. The action for indemnity was based upon the written drilling contract between Evangeline and Texaco, Inc. This contract contained the provision that Evangeline agreed to indemnify Texaco, Inc. from liability on account of personal injury resulting from any negligent act on the part of Evangeline.

As stated above, the jury found Texaco's employee Sadler was negligent in kicking the bushing through the hole and that such negligence was a proximate cause of plaintiff's injury. This case is controlled by City of Beaumont v. Graham, 441 S.W.2d 829 (Tex.Sup., 1969). The contract does not evidence an intention of the parties that Evangeline should indemnify Texaco, Inc. for the consequences of its own negligent conduct, or for the consequences of the joint negligence of the parties. Under these circumstances, indemnity could not be recovered.

Contribution was sought under Article 2212, Vernon's Ann.Civ.St., which provides for recovery by one tort feasor against whom a judgment is rendered from other co-defendants. This statute has no application to the present situation for the finding of "no duty" on the part of Evangeline is in legal effect a determination that Evangeline is not a joint tort feasor. These points of error are overruled.

Affirmed.

KEITH, J., not sitting.