Fletcher RABB, individually and d/b/a Vapo Gas and Appliance Co., et al., Petitioners,

v.

Hazel Veony COLEMAN, individually and as next friend of Allen Scott Coleman, and as community survivor of Mike Coleman, Deceased, Respondent.

No. B–2505.

Supreme Court of Texas.

July 7, 1971.

Rehearing Denied July 28, 1971.

Beckmann, Stanard, Keene, Krenek & Fulton, Richard C. Keene, San Antonio, R. S. Crawford, Jr., Uvalde, for petitioners.

Rice & Seely, Rudy Rice, San Antonio, Brown, Kronzer, Abraham, Watkins & Steely, W. James Kronzer, Houston, for respondent.

DENTON, Justice.

Hazel Veony Coleman, individually and as next friend of her minor son, Allen Scott Coleman, brought this suit against Fletcher Rabb d/b/a Vapo Gas and Appliance Co. and his employee, Les Trexler, for the death of Mike Coleman, their husband and father respectively. Coleman's death occurred as a result of the escape and explosion of butane and propane gas during a routine tank servicing operation at the family residence of the deceased. The trial court rendered judgment for the defendants below after a jury trial. The court of civil appeals reversed and remanded, holding the defense of volenti non fit injuria was improperly submitted. 461 S. W.2d 431. We reverse and remand to that court.

The accident occurred on plaintiff's premises. Defendant Rabb was the owner of Vapo Gas and Appliance Company, a butane and propane liquid petroleum gas dealership. Defendant Trexler drove one of Rabb's trucks used for delivering the fuels to customers. The Colemans had called Trexler and requested that he come fill the butane tank which provided cooking and heating fuel for their home. The tank was approximately ten feet from the back door of the Coleman house. The tank proper was beneath the surface of the ground with only the vent, safety pop-off valve, pressure gauge and refill connections

exposed. The safety pop-off valve was set to open when pressure in the tank exceeded eighty pounds per square inch.

When Trexler arrived he connected the truck's filler and return flow hoses to the tank and began pumping a mixture of butane and propane. Although their exact locations throughout the period in question are not clear by the record, Mr. and Mrs. Coleman, their son, Allen, and, of course, Trexler observed the refilling operation. During what had appeared to be routine procedures, the pop-off valve suddenly opened and began releasing butane gas with a loud noise. Mrs. Coleman said she retreated into the house, Allen said he ran around to the side of the house and called his dog, Trexler disconnected the hoses, and Mr. Coleman continued standing near the house. After the gas had vented into the air for about one and one-half minutes, it was ignited by an unknown cause and both Trexler and Mr. Coleman were burned. Mr. Coleman died ten days later as a result of the burns.

The suit was tried before a jury which found Trexler put gas in the tank containing a greater amount of propane than a person of ordinary prudence would have done under the same or similar circumstances, and that such act was a proximate cause of the explosion. Defendants failed to obtain favorable findings on contributory negligence and unavoidable accident issues but were successful with the defense of volenti non fit injuria:

*Special Issue No. 11:*

Do you find from a preponderance of the evidence that prior to the explosion in question a perilous condition existed as a proximate result of the gas escaping from the pop-off valve, on the premises in question?

Answer "yes" or "no."

ANSWER: Yes

If you have answered the foregoing Special Issue No. 11 "yes," but not oth-

erwise, then answer the following Special Issue:

*Special Issue No. 12:*

Do you find from a preponderance of the evidence that Mike Coleman, deceased, knew of the perilous condition on the premises in question?

Answer "yes" or "no."

ANSWER: Yes

If you have answered the foregoing Special Issue No. 12 "yes," but not otherwise, then answer the following question:

*Special Issue No. 13:*

Do you find from a preponderance of the evidence that Mike Coleman, deceased, realized that he was in a dangerous position due to such peril, if any, as inquired about in Special Issue No. 12?

Answer "yes" or "no."

ANSWER: Yes

If you have answered the foregoing Special Issue No. 13 "yes," but not otherwise, then answer the following Special Issue:

*Special Issue No. 14:*

Do you find from a preponderance of the evidence that Mike Coleman, deceased, voluntarily exposed himself to such dangers as existed at the time and on the occasion in question?

Answer "yes" or "no."

ANSWER: Yes

From a take nothing judgment Mrs. Coleman appealed urging that the volenti defense was not applicable and that the issues were improperly submitted, lacked evidentiary support and commented upon the weight of the evidence. The court of civil appeals concluded that the issue regarding the perilous condition was a general inquiry which did not achieve the purpose of determining if Coleman knew, realized

and exposed himself to the specific danger which caused his death. We do not reach the same conclusion.

■ Respondent has argued in all courts that the volenti doctrine was not applicable to this case. The primary thrust of that argument in this court is based on the legal relationship of Les Trexler and Mike Coleman at the time of the accident. Respondent points out that Coleman was not on the premises by license or invitation of defendants, but that Coleman was there by right. It was his home and he was entitled to be there without regard to petitioner's consent. Citing Hernandez v. Heldenfels, 374 S.W.2d 196 (Tex.Sup.1963), and Harvey v. Seale, 362 S.W.2d 310 (Tex. Sup.1962), she contends that the plaintiffs in those cases were owed a degree of care similar to that owed to invitees because they were on premises as a matter of right. We agree with the general premise of this argument and think the same degree of care was due Mike Coleman and his family. The premise does not lead us to the same conclusion, however. The common law has limited the liability of landowner-occupiers in varying degrees depending upon the beneficial relationships between the parties involved, but this preferred position is not to be the basis for transferring responsibility for damages or injuries caused by the landowners-occupier's own conduct. The fact that one owns or occupies land does not necessarily create in him the right to expose himself voluntarily to a danger which he knows and appreciates and thereby impose liability for damages on another on the land by his consent.

In *Hernandez* and *Harvey* the defendants tried to avoid liability by the traditional "no duty" concept but the plaintiffs successfully negated that contention upon showing that they were rightfully on the land notwithstanding the defendants' consent. Assuming evidence to support Hernandez' knowledge, appreciation and voluntary exposure to the danger, volenti would have been a defense. Volenti is-

sues were submitted but the jury found against defendant Heldenfels. We said there was evidence to support the jury's answers to the issues, *not* that volenti could not be invoked against a plaintiff on the property by right. In Harvey v. Seale we said defendant would not be heard to say that plaintiff voluntarily exposed herself to the danger. This because the evidence established that Mary Lee Harvey, a 9½ year-old child at play, did not have the requisite knowledge and appreciation of the danger at the time of the accident, nor was she voluntarily exposing herself to same. *See*, Dee v. Parish, 160 Tex. 171, 327 S. W.2d 449 (1959). This was not to say that she could not have assumed the risk. That she and Hernandez both had a right to be where they were when they were injured did not render them immune to the defense that they had voluntarily exposed themselves to the respective dangers.

 Volenti is an affirmative defense to any negligence action in which the defendant is responsible for a dangerous condition (static or non-static) or activity of which the plaintiff knows, appreciates the danger and voluntarily exposes himself thereto.[1] It is a separate concept from "no duty" and the applicability of one is not determined by applicability of the other. *Accord*, Halapeska v. Callahan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963). We hold that volenti non fit injuria was available to petitioner as a defense in this case.

The court of civil appeals has held that Special Issue No. 11 is too general and the jury's affirmative answer thereto does not provide the required fact finding that the danger of which Coleman knew, appreciated, and to which he voluntarily exposed himself was the particular danger which caused his injuries. 461 S.W.2d 434. The intelligent choice to expose oneself to a danger presupposes an awareness of that particular danger. The success of the vol-

enti defense in Texas cases has turned on whether or not it was established that the plaintiff knew he was exposing himself to the danger which in fact caused him harm. Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953); Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172 (1951); Cantrell v. Markham & Brown Co. and Assoc., Tex.Civ.App., 452 S.W.2d 940 (n. r. e.). In the *Triangle Motors* case it was not enough to determine that Richmond knew he was leaning over an open elevator shaft, but more specifically, that he was aware the elevator was above him. In the *Kane Boiler Works* case it was not enough to determine that Wood's job was to inspect the pipe for defective seams, but more specifically, that he was aware of a hidden defect in a weld in close proximity to the seam he was testing. In the *Markham & Brown* case it was not enough to determine that Cantrell had been working from the moving platform, but more specifically, that he was aware it might make a sudden lurch in contrast to the movements with which he was familiar. Accordingly, respondents would have us say that it was not enough to determine that Coleman knew that combustible gas had been escaping about ten feet from him for a minute and a half, but more specifically, that he was aware it would in fact explode. We do not believe the law requires as much.

Instead, the perilous condition in this case can be compared with Schiller v. Rice, 151 Tex. 116, 246 S.W.2d 607 (1952), where knowingly riding in an automobile with an intoxicated driver constituted sufficient knowledge that an accident might occur; McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954), where placing a ladder on a floor known to be slick constituted sufficient knowledge that the ladder might slip; and, J. & W. Corporation v. Ball, 414 S.W.2d 143 (Tex. Sup.1967), where attempting to place a

---

1. *Cf.* J. & W. Corporation v. Ball, 414 S.W.2d 143, 146 (Tex.Sup.1967) quoting McKee, General Contractor v. Patterson, 153 Tex. 517, 519, 271 S.W.2d 391, 393

(1954), that volenti is a defense to "all negligence actions." Subsequent decisions have limited the defense.

**388**

block of wood under a turning truck wheel with one's hand constituted sufficient knowledge that the hand might be suddenly pulled under the tire.

█ Here we have jury findings that Coleman knew of a perilous condition and realized he was in a dangerous position due to that condition. The perilous condition was further qualified by specifying that it resulted from the gas escaping from the pop-off valve. To require further qualification of this peril would unreasonably diminish the utility of the volenti doctrine as a workable defense. Certainly Mike Coleman knew this type of gas *could* explode. Indeed it is a matter of common knowledge.[2] The issues submitted and the jury's answers in regard to gases known to be combustible establish the requisite knowledge and appreciation. Voluntary exposure was established in Special Issue No. 14 and the defense was complete.

The court of civil appeals had before it other questions which were not considered and are not within our jurisdiction. Therefore the judgment is reversed and the cause remanded to the court of civil appeals to pass upon the points of error that it did not consider. It is so ordered.

STEAKLEY, Justice (dissenting).

The assumed risk doctrine of volenti non fit injuria—he who consents cannot receive an injury—is harsh and for this reason has been rigidly confined. See Ellis v. Moore, 401 S.W.2d 789 (Tex.Sup.1966); Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368 (Tex.Sup.1963); Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60 (1953). There must be full knowledge and appreciation of the very specific danger so that the one against whom the doctrine is invoked may be said to have intelligently chosen to put himself in the way of the particular risk. So, here, it must be shown and found that Coleman knew and appreciated that an explosion might occur outside the tank and deliberately chose to remain in danger as a result of an intelligent choice. Apart from the fact that it is hardly believable that Coleman would be unmoved if he knew an outside explosion of gas might occur in such close proximity, it is even less believable that he knew or appreciated that such an explosion might, in fact, occur. This danger certainly was not obvious to him, particularly so when the serviceman, whom Coleman had a right to presume knew his business, was also unmoved until the last second, and too late. As said in *Triangle Motors,* knowledge of "some danger" will not do. Moreover, Coleman did not know that the serviceman had admixed propane and butane in unsafe proportions, and he would have naturally assumed that the safety pop-off valve was performing its function of eliminating —not creating—a danger. To say that it is common knowledge that gas will explode is not to say enough. It must also be said that it is common knowledge that gas may explode in the atmosphere after a safety device has performed its function of venting excess pressure from inside a container. And it must be said that an outsider to the business would know that in performing its function the safety valve would create a danger just as deadly. This is not the way safety devices ordinarily operate.

All of this points to the correctness of the holding of the court of civil appeals that the *volenti* issues were improper because they did not call for a finding that Coleman knew and appreciated the particular danger, i. e., an explosion outside the tank, and remained in the danger zone by intelligent choice. One cannot be said to have acted with intelligence in this context unless he fully knows and understands the conditions and circumstances which call for a course of action. Coleman cannot be said to have had this knowledge

2. When asked why he ran around to the side of the house, the Coleman's ten-year-old son said, "I was going to get out of the way because I think I knew what happened was going to happen."

and understanding unless it is shown and found as a fact that he knew and appreciated the danger of an explosion of the gas which had been vented into the atmosphere by the safety valve.

Issue No. 11, from which the succeeding *volenti* issues stemmed, asked the jury to find whether a perilous condition existed prior to the explosion in question as a result of the escaping gas. The jury could have regarded the excess pressure in the tank which activated the safety valve as the perilous condition and in the succeeding *volenti* issues intended to do no more than find that Coleman knew of and exposed himself to this danger. After all, this was the condition signalled by the pop-off valve. Furthermore, it is somewhat difficult to apprehend how Issue No. 11 could have been answered other than affirmatively since an explosion did in fact occur, and most would agree that a condition resulting in an explosion was a perilous one.

All of which substantiates, I think, why the generality and nonspecificity of the *volenti* issues cannot be reconciled with the teachings of this Court in carefully circumscribing application of the assumed risk defense. The jury was not given an opportunity to find whether Coleman fully realized and appreciated the danger that might follow from the properly functioning safety valve. Indeed, Coleman may very well have regarded himself in less danger because the valve was doing what it was designed to do. I see a valid analogy to Ellis v. Moore. It was there held that knowledge of a defect which was found to be a proximate cause of the injury was not enough; there must be knowledge of the particular danger—there, that a tractor might overturn; here, that an outside explosion might occur. Moreover, there, as here, the specific danger was not so open and obvious as to charge the endangered party with knowledge and appreciation. As we said in *Halepeska*, "* * * the plaintiff must know (an issue of fact, usually) or be charged in law with knowledge and appreciation."

I would affirm the judgment of the court of civil appeals and therefore respectfully dissent.

CALVERT, C. J., and McGEE and DANIEL, JJ., join in this dissent.