Edwin A. GUNDOLF, Appellant,

v.

MASSMAN–JOHNSON, a Joint Venture, et al., Appellee.

No. 7273.

Court of Civil Appeals of Texas, Beaumont.

Oct. 28, 1971.

Motion for Rehearing Overruled Nov. 18, 1971.

Seale & Stover, Jasper, for appellant.

Pike Powers, Jr., Strong, Pipkin, Nelson, Parker & Powers, Beaumont, for appellee.

KEITH, Justice.

The plaintiff below appeals from a take nothing judgment entered in his third-party action for personal injuries received while he was upon defendant's job site. Defendant was the general contractor engaged in the construction of the Toledo Bend Dam upon the Sabine River while plaintiff was an employee of the engineering firm engaged by the owner of the project, being a concrete inspector charged with the responsibility of determining defendant's compliance with the terms and specifications of its contract.

The dam was so constructed that "weep holes" or drain pipes were placed in the dam to permit built-up pressure within the walls to be relieved during construction. The seepage of water through the weep holes caused green algae to accumulate upon the surface of the tail race of the dam. This accumulation was a matter of general knowledge to the workmen upon the job site, including the plaintiff, and other workmen had received injuries when they slipped and fell upon the slippery surface caused by the presence of the algae.

Under plaintiff's theory of the cause, as supported by his testimony, he was requested to make an inspection of the dam to determine if defendant had properly prepared an area thereof to receive more concrete. Knowing of the dangerous condition of the area because of the presence of the algae thereon, plaintiff requested that the algae be removed so as to eliminate the possibility of danger of injury when he made the requested inspection. According to plaintiff, he was assured by defendant's supervisors that the algae had been cleaned from the area and that it was safe for him to enter upon the dam to make the inspection.

Defendant says in its brief, "He [plaintiff] knew that despite cleaning, the concrete on the slab remained stained with a 'greenish cast', making it impossible to discern which areas of the slab had been cleaned and those which had not."

Plaintiff's trial pleadings charged that the defendant "undertook to remove the substance in question [the algae] from the area in which plaintiff had to work and indicated to plaintiff that such substance had been removed, but defendants negligently failed to remove all of such substance, and such negligence was a proximate cause of plaintiff's injuries." Without recounting the evidence in detail, it is sufficient to note that the testimony raised the issues submitted under this pleading, namely:

No. 1—Plaintiff slipped on algae on the tail race slab;

No. 2—On the occasion in question defendant "had agreed to clean the algae off of the tail race slab";

No. 3—Plaintiff came upon the tail race slab "with the belief that defendant had removed the algae";

No. 4—Defendant "undertook to clean said algae from the tail race slab";

No. 5—"[D]efendant failed to remove all of the algae from the tail race slab";

No. 6—Such failure was negligence;

No. 7—Which negligence was a proximate cause of the accident.

In Special Issue No. 8, the court placed the burden of proof upon the plaintiff to procure an answer that the area upon the dam site where plaintiff fell was "not open and obvious"; and, the jury failed to so find, answering: "It was open and obvious."[1] Special Issues Nos. 9, 10, 11 and 12, being conditioned upon a different answer to No. 8, were not answered.

The jury did *not* find that plaintiff failed to keep a proper lookout [Issue No. 13], but did find that "in the exercise of ordinary care, [plaintiff] should have known and appreciated the risk of walking in the area of the damsite where he fell," and that such "failure * * * to know and appreciate the risk" was a proximate cause of his fall [Issues Nos. 15 and 16].

In answer to No. 20, the jury did *not* find that plaintiff "knew that algae was on the concrete in the area of the damsite where he was walking"; and, finally, the accident was not the result of an unavoidable accident.

Plaintiff moved for the entry of judgment upon the verdict; or, alternatively, for judgment after disregarding the jury's answers to Special Issues Nos. 8 and 15, such contentions being set forth in the margin.[2] Our record does not show that

1. This "disjunctive" form of submission is authorized under Rule 277 and "neatly avoids the danger of conflicts." 1 Pattern Jury Charges, p. 20 (1969). See also Crowell-Gifford Furniture Company v. Cloutman, 276 S.W.2d 539, 550 (Tex. Civ.App., Beaumont, 1955, error ref. n. r. e.).

2. "That, in the alternative, the jury's findings in response to Special Issues No. 8 and No. 15 in all things should be disregarded because there is no evidence to raise such issues. Further plaintiff would show that all the evidence in the case is that the condition which caused plaintiff's injury was such that it was impossible to tell whether or not the

the court acted directly upon plaintiff's motion, but judgment was entered for defendant upon the basis of the jury's findings. Plaintiff's amended motion for new trial, containing the essential elements of his motion for judgment, was overruled by operation of law and this appeal follows. Since defendant has not challenged plaintiff's right to present the points which we now consider, we turn to a discussion of the controlling principles.

We encounter, at the outset of this case, defendant's reliance upon the "clumsy concept" of "no duty" [Halepeska v. Callihan Interests, Inc., 371 S.W.2d 368, 377 (Tex. Sup.1963)] and plaintiff's contention that such doctrine is not applicable under the rationale of Coleman v. Hudson Gas & Oil Corporation, 455 S.W.2d 701, 702 (Tex. Sup.1970). We join with the 1970 court in questioning the "usefulness of speaking as though there were some special rule in the owner, occupier, general contractor-invitee field requiring the invitee to 'negative no duty.'" *Hudson Oil,* supra (455 S.W.2d at p. 702).

We are of the opinion that this facet of the case is controlled by *Hudson Oil,* supra. The liability of the defendant was not limited to the slippery condition of the tail race when plaintiff came upon the site, "inasmuch as that was a danger which the plaintiff and all persons present appreciated, [and] defendant owed no further duty to the plaintiff and could not be liable." *Hudson Oil Case* (455 S.W.2d at p. 702).

But defendant undertook to clean up the area by removing the algae from the tail race, and having so undertaken to render the area safe, "it would be required to act with care." And, the jury having found that plaintiff relied upon defendant's prom-

ise to clean the area, and defendant having negligently failed to do so, "the duty of the defendant was something other than that owed by an occupier with respect to dangerous conditions of the premises." Id.

Without doing violence to the language used by Justice Reavley in the case under consideration, we paraphrase it so as to be applicable to the case under consideration:

> "If defendant engaged in any such activity [of cleaning up the algae on the tail race], it owed a duty of care to plaintiff. If it acted negligently, thereby injuring plaintiff, the defendant would be liable."

Here plaintiff specifically pleaded that the defendant negligently failed to correct the dangerous condition—and, more importantly, procured jury findings that such negligence was a proximate cause of his injury. Our case is, consequently, the exact converse of the situation prevailing in *Hudson Oil,* where the court said:

> "This is not a case of Coleman coming upon the lease with the belief that Hudson had already performed its promise and removed the gas."

Our plaintiff came upon the tail race "with the belief" that defendant had cleaned the algae off the surface—and procured jury findings to that effect.

So holding, plaintiff was under no obligation to negative "no duty" before imposing liability upon the defendant. Defendant's liability being active, i. e. its failure to correct the dangerous condition after promising that it would, the "no duty" defense passes out of the case and we are now in position to treat the case as an ordinary negligence case.

Plaintiff was upon the premises where he was injured as a matter of right. It

algae had been cleaned up, and the answers to Special Issues No. 8 and No. 15 are without support in the evidence and should be disregarded.

"Further, Special Issues No. 8 and No. 15 are not ultimate issues of fact in this

case, and the jury's answers thereto should be in all things disregarded and Judgment rendered for plaintiff in accordance with the jury's verdict."

was his duty to inspect the place where defendant was to do additional work upon the dam site to determine if the area was ready to accept additional concrete. If he "found a form that was faulty I could refuse to approve it for pouring" of this concrete. He amplified this authority in this manner:

"If the placing in the area where the concrete was going to be placed did not come up to reasonable specifications, I could call a halt to the placing of the concrete until it was made ready. If there was dirt, debris, trash, wood, fallen matters of any nature into that area, yes, I had the authority to stop the placing of concrete until it was cleaned up."

He was "the last man to sign the card before the concrete could be poured * * * [and] if [he] didn't sign it, it couldn't be poured." [3]

Plaintiff argues that he was "owed a degree of care similar to that owed to invitees because they were [he was] on premises as a matter of right." Rabb v. Coleman, 469 S.W.2d 384 (Tex.Sup.1971). We agree, but, as was said in *Rabb,* supra:

"Volenti is an affirmative defense to any negligence action in which defendant is responsible for a dangerous condition (static or non-static) or activity of which the plaintiff knows, appreciates the danger and voluntarily exposes himself thereto. It is a separate concept from 'no duty' and the applicability of one is not determined by applicability of the other."

The answers of the jury to Special Issues Nos. 15 and 16, quoted above, simply show that the plaintiff "in the exercise of ordinary care" should have known and appreciated the risk of walking on the dam

site in the area where he fell. But, as said by Justice Greenhill in *Halepeska,* supra (371 S.W.2d at p. 381) :

"On the basis of Wood v. Kane Boiler Works, [150 Tex. 191, 238 S.W.2d 172] and cases following it, therefore, for _volenti_ to be applicable, there must be *actual knowledge and appreciation*; or the danger must be so open and obvious that the plaintiff is charged in law with knowledge and appreciation thereof. So the plaintiff must *know* (an issue of fact, usually) or be charged in law with knowledge and appreciation. That being so, the 'should have known' of the danger, and 'should have appreciated the extent of the danger, if any, in opening the valves,' as issues of fact, in this Halepeska case were properly disregarded by the trial court, in so far as the defense of _volenti_ is concerned." [emphasis ours]

The only support defendant finds in the jury verdict for its defense of volenti is the "should have known and appreciated" finding in No. 14. Under *Halepeska,* "should have" will not substitute for actual knowledge, and such issues should have been "properly disregarded." See also, Greenhill, Assumption of Risk, XVI Baylor Law Rev. 111, 114 (1964) ; [4] El Rancho Restaurants, Inc. v. Garfield, 440 S.W.2d 873, 877 (Tex.Civ.App., San Antonio, 1969, error ref. n. r. e.).

We come now to a consideration of Justice Greenhill's qualification of the dictum in Robert E. McKee, General Contractor v. Patterson, 153 Tex. 517, 271 S.W.2d 391 (1954). We take this explanation from *Halepeska* (371 S.W.2d at p. 381) :

"The intent and purpose of the opinion [in McKee] was to say that while a person may not actually know of a danger,

3. Plaintiff was upon the premises where he was injured not "by consent of the landowner [defendant] but by virtue of a legal right to do so." Sharpe v. Adam Dante Corporation, 468 S.W.2d 167, 169 (Tex.Civ.App., Dallas, 1971, error granted). Justice Bateman in *Sharpe* dis-

cusses the cases on this facet of the matter but we do not place our decision upon this basis.

4. This article by Justice Greenhill is the same as the Bar Journal article cited by Justice Stephenson in his dissent.

he may not close his eyes to obvious dangers. That he 'should know' is a defense in law if he has knowledge of facts which would charge him in law with knowledge and appreciation. As so read, McKee is harmonious with this opinion."

Although the jury found in response to No. 15 that plaintiff, "in the exercise of ordinary care, should have known and appreciated the risk of walking in the area," it refused to find in answer to No. 20 that he "knew that algae was on the concrete in the area of the damsite where he was walking." The record is replete with testimony that working around the construction of a large dam is dangerous generally, from many causes other than algae and that every workman on such a job knows of many risks attendant upon the job.

The specific risk in issue here—as made by plaintiff's pleadings and evidence—was the failure of the defendant to clean the algae from the tail race slab, something which defendant had promised to him and upon which he relied. No. 15 did not inquire if plaintiff knew that defendant had not properly cleaned up the area, nor did No. 15 ask if the risk of walking in the area was due to defendant's negligent conduct in cleaning the dam site. As Justice Greenhill said in the law review previously noted, "It is immaterial that he [plaintiff] had knowledge of one hazard if he was actually injured by another hazard created by the defendant." (XVI Baylor Law Rev., at p. 128). Cf. Goodson v. Southland Corporation, 454 S.W.2d 823 (Tex.Civ.App., El Paso, 1970, error ref. n. r. e.).

In Texaco, Inc. v. Forester, 456 S.W.2d 196, 198 (Tex.Civ.App., Beaumont, 1970, error ref. n. r. e.), Justice Stephenson had a similar situation under review. There Texaco and its employee had been found guilty of "active" negligence, the kicking of a rotary bushing through a hole in the drilling platform; and, Texaco had secured findings that Forester "knew and appreciated the danger of working under the

[open] rotary hole." Justice Stephenson then noted that it was the burden of Texaco (after the jury had convicted it of active negligence) to secure "a finding of contributory negligence on the part of plaintiff, in order to avoid liability, which they failed to do." (456 S.W.2d at p. 198).

■ Defendant had the same burden here. Having been convicted of active negligence—and not upon the basis of a failure to furnish plaintiff with a safe place to work—defendant had the burden of procuring a finding of contributory negligence on the part of the plaintiff which proximately caused his injury. It failed to procure such a finding. Special Issue No. 15 was, therefore, immaterial and did not constitute a defense to liability based on the first seven issues. Plaintiff's first four points are sustained.

■ Plaintiff prosecuted his third-party claim against the defendant and there was no intervention by the subrogated workmen's compensation insurance carrier. In other words, he enforced his claim "without any aid, approval, authority or assistance" from the compensation insurance carrier. Gautreaux v. City of Port Arthur, 406 S.W.2d 531, 535 (Tex.Civ.App., Beaumont, 1966, error ref. n. r. e.). The jury assessed his damages in this case at the sum of $35,000 and it is undisputed in our record that the compensation carrier had paid him $4230 in settlement of his claim under the compensation law.

Plaintiff was entitled to be paid only once; but, he was entitled to the full amount of his damages as assessed by the jury, namely, $35,000. He moved the court for entry of judgment against the defendant for the sum of $30,770 but the court denied his motion and rendered judgment for the defendant. From what we have said, it is apparent that we are of the opinion that the trial court erred in rendering judgment for the defendant and against the plaintiff. It becomes our duty, therefore, to render the judgment which the trial court should have rendered, namely,

in favor of the plaintiff and against the defendant in the amount of $30,770 together with interest from the date of the judgment below. It is so ordered.

Reversed and rendered.

STEPHENSON, Justice (dissenting).

I respectfully dissent. I would affirm the judgment of the trial court.

I agree with the statement in the majority opinion that "no duty" is a "clumsy concept," but it is a part of the law of this state until our Supreme Court says otherwise.

Following a careful study of the article by Associate Justice Joe Greenhill, Assumption of Risk, 28 Tex.B.J. 21 (1965), the *Halepeska,* supra, and *Hudson Oil,* supra, and related opinions, I have come to a different conclusion than the one reached in the majority opinion.

I am convinced plaintiff's cause of action in this case is basically one of plaintiff-invitee against defendant-occupier for failure to furnish plaintiff a reasonably safe place to work. This is true even though plaintiff, after pleading the relationship between the parties, alleged an attempt on the part of defendant to remedy the dangerous condition and the negligent failure to do so. This did not alter plaintiff's basic cause of action, but merely added an additional element.

I think a simple explanation would be as follows:

1. Defendant had a duty to furnish plaintiff a reasonably safe place to work.

2. The condition of the algae rendered this an unsafe place to work.

3. Defendant could escape liability by either (a) warning plaintiff of the danger or (b) attempting to remedy the condition without negligence.

4. Defendant's negligently failing to remedy the condition, after attempting to do so, was still a breach of defendant's duty to furnish plaintiff a reasonably safe place to work.

5. The doctrine of "no duty" was still applicable, and plaintiff still had the burden of pleading and proving the existence of a duty and a breach of that duty.

6. Plaintiffs still had the burden of securing a negative finding as to "open and obvious" which he failed to do.

I do not agree with the statement in the majority opinion that this facet of the case is controlled by *Hudson Oil,* supra. I do not construe *Hudson Oil,* supra, as holding that the defense of "open and obvious" was not available to a defendant in the position of the defendant in our case. As our Supreme Court has said so many times, a plaintiff may not close his eyes to obvious dangers. I do not construe any case in this state as holding that merely because the defendant-occupier has undertaken to remedy a dangerous condition that a plaintiff may blindly walk into an open and obvious condition and then recover for his injuries. I do not believe the law of this state will place a plaintiff in a more favorable position because a defendant has undertaken to remedy a dangerous condition, than one who merely warns a plaintiff of such condition, and does nothing more. In this case, the facts clearly show this plaintiff knew the facts constituting the danger (after the attempt was made by defendant to clean the algae) and, therefore, was charged with the appreciation of the danger. The finding by the jury that the condition was open and obvious, after such attempt at cleaning, was supported by the evidence. In the words of Justice Greenhill applied in this case, any fool could plainly see the condition was still dangerous.

The majority cites a case, Texaco, Inc. v. Forester, in which I wrote the opinion. I attempted in that case to make it clear, under the rationale of the article by Justice Greenhill in the bar journal referred to above, that the *Forester Case* was one involving active negligence, as distinguished

from a "condition" as it exists in the case before us. I stated in that opinion that Forester's cause of action against Evangeline (the defendant-occupier) was one of failure to furnish a safe place to work, but that the cause of action against Texaco was one of negligence. The active negligence in the *Forester Case*, supra, was the kicking of a rotary bushing through a hole in the drilling platform by one of Texaco's employees. In the present case, the plaintiff's injuries resulted from a "condition," the algae on the concrete, and *Halepeska* (no duty and open and obvious) still controls.