T. J. YANCEY, Jr., d/b/a Yancey Motors, Appellant,

v.

Eulalio H. OLVERA et al., Appellees.

No. 15321.

Court of Civil Appeals of Texas, San Antonio.

Dec. 18, 1974.

Rehearing Denied Feb. 12, 1975.

House, Mercer, House, Brock & Wilson, San Antonio, for appellant.

James Haynes, Jr., Laredo, for appellees.

CADENA, Justice.

Plaintiffs, Eulalio H. Olvera and his subrogee, North American Van Lines, Inc., filed this suit to recover from T. J. Yancey, Jr., d/b/a Yancey Motors, the value of a 1966 Peterbilt tractor-truck which Olvera left with defendant, at defendant's place of business in Laredo, for repairs and which defendant failed to return to Olvera. Defendant appeals from a judgment awarding plaintiffs $15,100.00 in accordance with the verdict of the jury.

On July 28, 1970, Olvera, a resident of the State of Indiana, delivered his truck to defendant for repairs. The repairs were made by defendant, after which the truck was parked in the rear of defendant's parking or storage lot. When defendant

opened for business on the morning of July 31, 1970, the truck was not on the lot. When Olvera called for the truck he was told that it was not there. Olvera paid for the repairs because of defendant's refusal to return a shotgun which Olvera had left with defendant for safe-keeping unless the repair bill ($156.00) was paid.

Defendant's premises consist of at least one building and an adjacent storage or parking lot. This lot is enclosed by a chain link fence, six feet in height, except for an area, some fifteen feet wide, which is un-fenced and is used as a driveway or place of ingress to and egress from the parking lot. When defendant was not open for business, a chain was strung across this unfenced portion of the lot. One end of the chain was permanently attached to a post embedded in concrete on the lot. The other end of the chain, when defendant's place of business was closed, was extended across the entranceway, passed through an opening in the wall of the building, and attached to a beam inside the building. On the morning when the disappearance of the truck was discovered, the chain was lying on the ground, still attached to the outside post and the beam within the building, but the outside post had been wrenched from its concrete base and it, too, was lying on the ground.

The truck was never returned to Olvera and the evidence does not disclose its present whereabouts.

The jury found that defendant's failure to maintain a gate at the entrance to the lot constituted negligence (special issue no. 1), and that such negligence was a proximate cause of the disappearance of the truck (special issue no. 2); that defendant's failure to have a night watchman or attendant on duty amounted to a failure by defendant to watch over and care for the truck (special issue no. 3), which constituted negligence (special issue no. 4) which was a proximate cause of plaintiff's loss (special issue no. 5); and that the reasonable cash market value of the truck imme-diately prior to July 31, 1970, was $15,100.-00 (special issue no. 6).

Defendant's brief presents twenty-four points of error. Several of these points complain of the action of the trial court in overruling defendant's objections to the charge. The transcript reveals that the jury returned its answer to the special is-sues on November 14, 1973. The judgment was signed on November 27, 1973. Plain-tiff's original motion for new trial was filed on December 5, 1973. The objections to the charge were filed on December 20, 1973, on the same day that defendant's amended motion for new trial was filed, fifty days after the case was submitted to the jury and twenty-three days after the judgment was signed. Rule 272, Texas Rules of Civil Procedure (1974) requires that objections to the charge be presented in writing before the charge is read to the jury, and that all objections not so made and presented shall be considered as waived. There is nothing in the transcript to suggest that the objections were dictated to the court reporter in the presence of and with the consent of the court and op-posing counsel before the charge was read to the jury and subsequently transcribed. The objections, then, were not timely filed and the points of error complaining of the court's ruling on such tardy objections can-not be considered. Hicks v. Fredericks, 286 S.W.2d 315 (Tex.Civ.App.—Beaumont 1955, no writ). Defendant's points 4, 5, 6, 7, 11, 12, 13, 14, 15, 16, 17, 18, 19, 20, and 21 are overruled.

Points 1, 2, 3, 8 and 9 assert that the trial court erred in admitting, over defend-ant's objection, the testimony of plaintiffs' witnesses concerning the value of the truck, and that there is no evidence or, in the alternative, insufficient evidence, to support the jury's finding, in answer to special issue no. 6, that the value of the truck was $15,100.00.

Olvera, the owner of the truck, testified that he had purchased it in 1968, at a time when it had been driven 125,000 miles, for

$16,000.00. Since that time, he had added approximately $6,000.00 worth of extras. He stated that he took good care of the truck, since it had to undergo governmental inspection every four months, and that it was in excellent condition. He was then asked the value of the truck in Laredo, Webb County, Texas, "in the summer of 1970." Before he could answer this question, the witness was taken on "voir dire" by defendant's counsel who, after eliciting the facts that Olvera had never lived in Webb County and had never purchased a truck in such county, objected to testimony by Olvera relating to the value of the truck because "the proper predicate has not been laid and the witnesss has not been qualified." After this objection was overruled, the witness testified that he knew the value of such trucks and, when asked concerning the value of the truck "on July 31, *1968*," (emphasis added), he answered that the truck had a value of $17,000.00. He was then asked why, if he purchased the truck in 1968, he claimed it was worth more in 1970, and he said that he arrived at the figure of $17,000.00, because of the "extras" which he had added.

■■ The owner of property is qualified to testify concerning the value of his property even though, under the rules applicable to qualifications of witnesses to give opinion testimony, he would not be qualified to testify concerning the value of similar property owned by others. Barstow v. Jackson, 429 S.W.2d 536 (Tex.Civ. App.—San Antonio 1968, no writ) ; 3 Wigmore, Evidence § 716, p. 56 (1970). Olvera testified that he had been in the trucking business for over twenty years, during which time he had purchased several trucks for use in his business and that, based on his experience and his knowledge of trucks, he knew the value of 1966 Peterbilt trucks. The trial court did not abuse its discretion in permitting him to testify.

■ Considering the testimony of Olvera as a whole, it is clear that his opinion as to value is referable to the first question propounded to him relating to value of the truck in Laredo in the summer of 1970. Despite the fact that his attorney later asked the value as of July 31, 1968, rather than July 31, 1970, it is clear from the ensuing questions and answers, particularly the query asking the witness to account for the increase in value between the time of the purchase in 1968 and the figure he had given as the value of the truck in 1970, and his response referring to the "extras" he had added, that his testimony related to the value of the truck in the summer of 1970.

■ The other value witness, Jose Gutierrez, had been engaged in the business of selling cars and trucks in Laredo for over 20 years. He expressed familiarity with Peterbilt tractors and with the value of new and used tractors. When asked the value of the truck "in July, 1970," he said that such a truck, which had been run, as had Olvera's, for 300,000 miles, would be worth from $15,000.00 to $18,000.00, without the "extras" which had been added by Olvera. He was then asked what the value of such a truck, with the extras, would be in Laredo. Before he could answer this question, defense counsel interrupted for the purpose of conducting a "voir dire" examination, during which the witness testified that he had never worked for a Peterbilt dealer and had never seen Olvera's truck. The witness then testified, in response to questions by plaintiffs' counsel, that the value of such a truck, with air conditioning and the type of brakes which Olvera had installed, would, in 1970, be worth $15,000.00 to $18,000.00 "easy."

We conclude that the court did not err in admitting the value testimony of Gutierrez. He stated he was familiar with Peterbilt trucks and with the value of new and used trucks. The fact that he had never sold Peterbilt equipment and had never seen the Olvera truck are matters which the jury could properly consider in weighing his testimony, but such factors did not make his testimony, which was re-

ferable, by hypothetical questioning, to a truck such as Olvera's, inadmissible.

Further, as in the case of Olvera's testimony, it is apparent that, viewing the Guiterrez testimony in context, despite the interruption occasioned by defense counsel's "voir dire" examination, the witness was giving his opinion as to the value of the truck in Laredo in July, 1970. In any event, since the testimony of Olvera is, in itself sufficient to sustain the jury value finding, it cannot be said that the admission of the Gutierrez testimony was prejudicial.[1]

Points 1, 2, 3, 8 and 9 are overruled.

Point 10 complains of the admission of testimony by Lee Addison, one of defendant's employees, to the effect that shortly after the disappearance of Olvera's truck, the chain across the entrance to defendant's lot was replaced by a gate. On direct examination, the witness, in response to a question from plaintiffs' attorney, stated that he had built a gate at the entrance after the truck was "stolen." In answer to the next question he replied that he could not recall whether he had built the gate "a week, a month or two months" after the incident. At this point counsel for defendant objected on the ground that plaintiffs' attorney was leading the witness. After the objection was overruled, the witness testified that he built the gate "after the accident [sic]." In answer to other questions he described the gate, describing it as a "strong gate" about five feet high and twenty feet wide. He then stated that the gate had replaced the chain. He was then asked to name the person who asked him to build the gate, at which point counsel for plaintiff requested permission to approach the bench. The ensuing conference between the court and the attorneys was not recorded by the trial reporter. The witness was again asked the identity of the person who told him to build the gate, and defense counsel objected "on the ground

that any subsequent acts or actions on the part of Yancey Motors would not be any indication under the law of any prior negligence, and for that reason defendant objects and excepts to this line of questioning . . . . and any response of this witness to that question." Counsel for plaintiffs then stated that the purpose of his question was "to show that there was no gate at the time of this incident and that the gate should have been there." The court then overruled defendant's objection, and the witness answered that T. J. Yancey, the defendant, had told him to build the gate.

On cross-examination of this witness he stated in response to questions by defense counsel that a truck could be driven through a gate and that "for all practical purposes it would not have made any difference whether there had been a gate there as opposed to a chain if somebody wanted to drive through it with a tractor they could have," although "the gate would tear up the front of the tractor a little bit." On redirect examination, in answer to a question whether a "big gate would damage the tractor to some extent if he ran over a big gate," the witness replied, "Well, like the gate we built afterwards it could go through that too." Defendant did not object to this answer on the ground that it was not responsive or on any other ground.

Thus, the record reflects that, prior to defendant's objection, the witness had testified that a gate had replaced the chain after the incident without objection other than the objection to the effect that the questions were leading. By the time that defendant made the objection on which his point 10 is based, 16 questions relating to the construction of the gate had been asked and answered. Defendant's objection did not embody a request that the answers to such 16 questions be stricken and that the jury be instructed to disregard such testimony. Further, no objection was interposed when the witness volunteered the in-

---

1. Cain v. Fontana, 423 S.W.2d 134 (Tex.Civ. App.—San Antonio 1967, writ ref'd n. r. e.);

Burney v. Ibarra, 415 S.W.2d 517 (Tex.Civ. App.—San Antonio 1967, writ ref'd n. r. e.).

formation, on redirect, concerning the gate "we built afterwards"; no motion was made to strike the unresponsive reply, and no request was made that the jury be instructed to disregard it. Under these circumstances, there is no basis for reversal. Battles v. Adams, 415 S.W.2d 479 (Tex. Civ.App.—Austin 1967, writ ref'd n. r. e.); Valdez v. O'Connor, 17 S.W.2d 835 (Tex. Civ.App.—San Antonio 1929, no writ).

■ In any event, the admission of the testimony concerning the subsequent replacement of the chain by a gate could only affect the jury finding that the failure of defendant to maintain a gate constituted negligence which proximately caused plaintiffs' loss. In view of the other finding of negligence, which we hold was supported by the evidence, the judgment in favor of plaintiff would still be correct and, therefore, the error of which defendant complains in point 10 must be held to be harmless. Scott v. Farmers' & Merchants' National Bank, 97 Tex. 31, 75 S.W. 7 (1903); McMillion v. Wilkinson, 135 S. W.2d 231 (Tex.Civ.App.—Dallas 1939, writ dism'd jdgmt cor.).

Point 22 asserts that the trial court erred in overruling defendant's motion for instructed verdict because there was no evidence of negligence on the part of defendant.

Defendant argues, in effect, that the absence of a gate cannot be made the basis for a finding of negligence because the undisputed evidence shows that, even if defendant had maintained a gate, Olvera's truck, a vehicle of some 325 horsepower, could have been driven even through a big gate, and that the failure to maintain a nightwatchman cannot be made the basis for a finding of negligence because defendant was under no common law duty to have a nightwatchman.

■ The jury was justified in concluding that the presence of a chain, some three feet above the ground, as the only deterrent to egress to the lot, was not sufficient precaution against unauthorized entry to the lot, since any person could gain access to the lot either by going under the chain or climbing over it. That is, the jury could justifiably have concluded that there was, as a practical matter, no effective obstacle to entrance to the lot. We cannot say, as a matter of law, that the presence of the chain constituted a reasonable safeguard against unauthorized entry.

The evidence also establishes that defendant maintained a light, of the "street light" type, on the lot. There is no evidence to the effect that on the night in question, the light was burning. The only witness who testified as to the effectiveness of the light said that he could not say whether the light was such as would "pretty well light up the entire area of the parking lot back there" where the Olvera truck was parked.

■ The fact that Olvera's truck, which was described as "big" could have been driven through a gate as easily as through the chain is irrelevant if the jury believed that the chain was not a reasonable deterrent to access to the lot at night and that a reasonable purdent man would have maintained a gate which would more effectively have prevented entry.

■ We agree that defendant's failure to employ a nightwatchman does not constitute negligence as a matter of law. But this does not mean that it can be said categorically that, as a matter of law, a bailor, in discharge of his duty to take reasonable precautions against theft of the bailed article, is under no duty to employ a nightwatchman. Whether the failure to employ a nightwatchman constitutes negligence depends on the facts and circumstances of each case. Since we cannot say, from the record before us, that the facts and circumstances of this case preclude the inference that an ordinary prudent bailor would have employed a nightwatchman, we must overrule defendant's "no evidence" point.

■■■■■ Point 23 complains of the court's refusal to submit, as requested by defendant, a special issue inquiring whether or not the Olvera vehicle had been stolen. The record before us establishes as a matter of law that the vehicle was stolen. Under such circumstances, the submission of defendant's requested issue was not required. 3 McDonald, Texas Civil Practice § 12.08, p. 294 (1970). In view of this holding, we must also overrule defendant's point 24, which complains of the trial court's refusal to allow the police officer who investigated the incident to testify that, based on his investigation, his opinion was that the vehicle had been stolen.

The judgment of the trial court is affirmed.