ALLIED INDUSTRIAL INTERNATIONAL, INC., Coast Industrial Exchange, Inc., Ray's Bit Retipping Service, Inc., Dresser Industries, Inc. and Crane Welding Supply Company, Appellants,

v.

Jose PLACENCIO, Appellee.

No. 04–83–00280–CV.

Court of Appeals of Texas, San Antonio.

Nov. 21, 1984.

Rehearing Denied Feb. 1, 1985.

G. Thomas Coghlan, San Antonio, Richard C. Keene, Gray & Keene, San Antonio, for appellants.

Russell H. McMains, Corpus Christi, Homero C. Canales, Alice, Steve Hastings, Corpus Christi, for appellee.

Before CADENA, C.J., and BUTTS and TIJERINA, JJ.

## OPINION

BUTTS, Justice.

This is a products liability action, arising when a grinding wheel flew apart, injuring plaintiff, Jose Placencio, as he worked with it. The injuries occurred when plaintiff was sharpening or grinding a 25 pound drill bit. It is the bench grinder to which the wheel was attached which is the subject product of the appeal. He with his wife, Frances, sued Allied Industrial International, Inc. and Coast Industrial Exchange, Inc., distributors of the bench grinder; Ray's Bit Retipping Service, Inc., a retailer; Dresser Industries, manufacturer of the grinding wheel; and Crane Welding Supply Company, retailer of the wheel. Transamerica Insurance Company, having paid worker's compensation insurance, intervened to assert subrogation rights to plaintiff's possible recovery. Dresser Industries, Inc., Crane Welding and Ray's Bit Retipping Service each obtained a directed verdict that plaintiff take nothing against them. The judgment is against Allied and Coast. Only Allied and Coast appeal.

In answer to special issues the jury found: (1) when Allied sold the bench grinder in question, it failed to furnish adequate warnings of the danger(s) or adequate instructions for safe use; (2) such failure rendered the bench grinder unreasonably dangerous as marketed; (3) such failure was a producing cause of the occurrence; (4) the guard on the grinder was defectively designed at the time it left the possession of Allied; (5) such defective design was a producing cause of the occurrence in question; (6) Jose Placencio should be compensated in the amount of $650,000 for his injuries resulting from the occurrence and, (7) Frances Placencio was not entitled to any damages for loss of consortium.

The judgment provides (1) that Coast and Allied are jointly and severally liable to Jose Placencio in the amount of $564,495 (the jury awarded $650,000.00); (2) that Allied fully indemnify Coast for any and all amounts owed by it to the plaintiff (Allied acknowledged an agreement to indemnify Coast); (3) that intervenor Transamerica Insurance Company recover $37,365.54 of the judgment; and (4) that Jose's wife recover nothing in her claim for loss of consortium. We reverse and remand.

On the theory of strict liability in tort, plaintiff alleged defendants failed to provide an adequate warning on the grinder as to the actual revolutions per minute at which the grinder rotated. He alleged there were not adequate instructions for the use of the bench grinder with various grinding wheels on the market. And, further, he charged the grinder was defective in that the guard on the grinder did not comply with safety standards for such guards. While plaintiff grounded his suit also upon negligence and breach of warranty theories, the special issues addressed only the strict liability theory of the cause of action.

RESTATEMENT OF TORTS 2d § 402A (1965), adopted as governing by Texas in 1967, governs both warning and

design defect cases. In a warning defect case, the plaintiff must show that the manufacturer knew or should have known of the risks at the time the product was sold and failed to provide warnings of the dangers and/or instructions for safe use. *Bristol-Myers Co. v. Gonzales*, 561 S.W.2d 801, 804 (Tex.1978). In a design defect case, the plaintiff must show that a facet of the design plan renders the product unreasonably dangerous as designed. *Boatland of Houston, Inc. v. Bailey*, 609 S.W.2d 743, 748 (Tex.1980); *Turner v. General Motors Corp.*, 584 S.W.2d 844, 851 (Tex.1979); *Bryan v. John Bean Division of FMC*, 566 F.2d 541, 547 (5th Cir.1978).

On appeal Allied and Coast do not challenge the sufficiency of the evidence regarding either a warning defect or a design defect. The evidence is undisputed that the grinder came with no instruction booklet nor any nameplate indicating the safe speed at which the grinder could operate. While an instruction card accompanied the grinding wheel, there was none with the bench grinder.

The testimony of expert witnesses, who were engineers and metallurgists, also established that the guard on the bench grinder, its purpose being to contain debris, was made of a brittle aluminum alloy of slightly more than ⅛th inch thickness contrary to ANSI standards requiring that the guard be made of ductile material, a minimum of ⅜ths inch thickness.[1]

Plaintiff stated he received about one-half hour of instruction to operate the grinder from his employer, Mac's Bit Service, where he had been working for six weeks before the date of the accident on April 19, 1977. After grinding on a 25 pound drill bit for about one-half hour, he took a "break." Upon returning, he started the bench grinder again. The grinding wheel immediately fractured into two halves. The right guard attached to the bench grinder fragmented. Fragments of the guard, along with debris from the grinding wheel, travelling explosively, struck plaintiff in the face and head, impacting on the bridge of his nose and forehead and penetrating his face shield. This caused impaired vision in plaintiff's right eye; his frontal sinuses were fractured and crushed; his nasal bones were crushed and flattened, resulting in some loss of smell and taste. He also suffered a skull fracture. At the time of trial, he complained of resulting headaches and dizziness and constant watering of the left eye. He has been unable to return to work on a permanent basis, but has sometimes been employed setting up electrical equipment for a musical group.

Allied brings ten points of error. In points one through five, it charges that the trial court erred in failing to grant Allied's submitted defensive issues on misuse and/or alteration, and further that it was plaintiff's burden to show there was no misuse and/or alteration. In points six through eight, Allied argues error resulted when the trial court submitted certain special issues which assumed that Allied had, in fact, sold the bench grinder when the evidence of sale was legally and factually insufficient. In points nine and ten, Allied challenges the damages awarded to plaintiff as being grossly excessive.

Coast brings seven points of error: Coast contends, in points one through three, that the judgment against Coast cannot stand because there are no special issues finding Coast liable. In points four through six Coast challenges as factually insufficient the evidence which would support the jury finding of plaintiff's loss of future earning capacity in the amount of $300,000. In point seven, Coast adopts all of Allied's points of error. Plaintiff claims by crosspoint that the trial court should not have reduced the sum awarded by the jury to plaintiff for his injuries.

Allied submitted its request for special issues on January 27, 1983. The judge refused these requested special issues, endorsed them as refused, and filed them with the clerk of the court. This preserved any error for appellate review.

---

**1.** American National Standards Institute sets standards for grinding wheels.

TEX.R.CIV.P. 276. The jury returned its answers to the submitted special issues on that same day. Judgment was entered on March 23, 1983. We must, however, determine whether Allied timely filed objections to the charge of the court. On the first page of its exceptions and objections is the file mark indicating these were filed on June 8, 1983, over two months after judgment was entered. However, on the last page of the exceptions and objections, there is the stamped signature of the trial judge following this statement:

The ABOVE and FOREGOING objections and exceptions were presented to the Court by counsel above-named in timely and proper form, and except as reflected in the Charge of the Court as given to the jury, were by this Court overruled.

There is contradictory evidence on the face of the record, the file mark indicating the exceptions and objections were filed late, and the stamped signature in the back indicating timely filing. TEX.R.CIV.P. 272 provides a presumption that the party making such objections filed them timely. Therefore, we find that Allied's objections were timely made and preserved.

■ We note, however, that Coast, unlike Allied, neither submitted requested special issues nor offered objections to the court's charge. Coast cannot object in its brief on appeal to the court's charge when it neither submitted special issues nor excepted and objected to the court's charge. *Campbell v. Davis*, 563 S.W.2d 675, 678 (Tex.Civ.App.—Tyler), *reversed on other grounds*, 572 S.W.2d 660 (Tex.1978). Thus, as to point of error seven, Coast waived any complaint directed to special issue submission.

The matters in argument may be addressed under each of three categories: (1) was it necessary that special issues establish the distributive chain in order to support the liability of Allied and Coast?; (2) was Allied entitled to the defensive issues of misuse and/or alteration in the court's charge?; and (3) what should be the proper award of damages, if any, to plaintiff?

## DISTRIBUTIVE CHAIN

Appellant Allied objects to special issues one and four which states that Allied sold the grinder, contending this is an issue in dispute.

Special Issue No. 1

At the time Allied Industrial International, Inc. sold the grinder in question, did it fail to furnish with the product adequate warnings of the danger(s) or adequate instructions for safe use with respect to the product?

"Adequate warnings and instructions" means warnings and instructions that are given in such form that they could reasonably be expected to catch the attention of the reasonably prudent person in the circumstances of its use; and the content of the warnings and instructions must be of such a nature as to be comprehensible to the average user and to convey a fair indication of the nature and extent of the danger and how to avoid it to the mind of a reasonably prudent person.

Answer "Yes" or "No."

Answer: Yes

## SPECIAL ISSUE NO. 4

Was the guard on the grinder defectively designed at the time it left the possession of Allied Industrial International, Inc.?

A "defectively designed" product is a product that is unreasonably dangerous as designed, taking into consideration the utility of the product and the risk involved in its use.

Answer: "Yes" or "No."

ANSWER: Yes

Harry W. Steere, general manager of Allied, testified that "Chicago Heavy Duty" is the logo on Allied's products, and that Coast was one of Allied's "big" customers. However, as a result of a move, Allied lost the records of the sale of this particular grinder to Coast. Carl Stronberg, vice-president and general manager of Coast, testified that he bought the grinder from

Allied; he knew this because Allied's logo "Chicago Heavy Duty" appeared on the grinder; however, he could not designate the particular grinder because there was no serial number. Stronberg also testified that he sold two grinders to Ray's Bit Service; the invoice of that sale was admitted into evidence without objection. Ray testified that he bought the subject grinder for his father-in-law who owned Mac's Bits. M.C. McKee, the owner of Mac's Bit Service, testified that he obtained the grinder from Ray.

■ We find the evidence here conclusively establishes the distributive chain from Allied to Coast to Ray's Bit Service to Mac's Bits. *Compare Coca-Cola Bottling Co. of Lubbock v. Fillmore*, 453 S.W.2d 239, 241 (Tex.Civ.App.—Amarillo 1970, no writ) (link in distributive chain from bottler to filling station missing).

■ We note the new Texas rule of evidence 902(7),[2] not in effect at the time of trial, provides that the trademark itself connects the product to the manufacturer. Applying the reasoning of *Coca-Cola Bottling of Lubbock, supra*, we find there is no missing link in the distributive chain. A special issue should not be submitted when evidence is conclusively established or when it is a matter of legal deduction from undisputed facts. *Lumbermen's Insurance Corp. v. Jones*, 311 S.W.2d 873, 875 (Tex.Civ.App.—Fort Worth 1958, writ ref'd n.r.e.) (where stipulation, no issue goes to the jury); *Yancey v. Olvera*, 518 S.W.2d 935, 942 (Tex.Civ.App.—San Antonio 1974, writ ref'd n.r.e.) (where evidence established as a matter of law, submission of special issue not required).

Allied's points six through eight are overruled. The record also discloses a stipulation of the parties that Coast is part of the distributive chain. Thus, no special issue is necessary finding Allied or Coast to be part of the distributive chain.

**2.** Rule 902. Self-Authentication.
Extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to the following:

■ Coast further argues that because no issues address its liability, the judgment against it must fall. We do not agree. The evidence shows the alleged defects existed when Allied placed the product in the stream of commerce and nothing is shown to demonstrate the alleged defects were not there when Coast sold the product.

■ Texas courts follow section 402A of the Restatement of Torts 2d and rule that strict liability in tort lies against the distributor as well as the manufacturer of defective goods. *Rourke v. Garza*, 530 S.W.2d 794, 800 (Tex.1975). The evidence is undisputed that Coast was a distributor. If there had been affirmative evidence that Coast was not a part of the distributive chain as a seller, the trial court should have submitted an issue on the disputed fact. There was, however, a stipulation that Coast was part of that chain. TEX.R. CIV.P. 277 and 279 place no duty on the trial court to submit an issue on an undisputed fact. *Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex.1971). Further, Coast did not request any special issue. We overrule Coast's points one through three.

### DEFENSIVE ISSUES

Appellant requested fifteen special issues on misuse and/or alteration and negligence as well as definitions on alteration, misuse and negligence. The trial court refused all requested defensive issues and definitions.

■ In its recent opinion, *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 434 (Tex.1984), the Supreme Court of Texas replaced unforeseeable misuse as a defense with the doctrine of comparative fault, ruling, however, that the doctrine of comparative fault should apply prospectively to govern product cases tried after July 13, 1983. Since the present trial began on January 24, 1983, the defense of unforeseeable misuse rather than comparative fault was a viable one.

(7) Trade inscriptions and the like. Inscriptions, signs, tags, or labels purporting to have been affixed in the course of business and indicating ownership, control, or origin.

■ In a landmark case, *General Motors Corp. v. Hopkins*, 548 S.W.2d 344, 352 (Tex.1977), the Texas Supreme Court treats alteration as a kind of misuse. *See* Sales, *Assumption of the Risk and Misuse in Strict Tort Liability—Prelude to Comparative Fault*, 11 TEX.TECH.LAW REV. 729, 749–53 (1980). In *Hopkins*, the court said that the alteration of the carburetor was in essence a misuse of that carburetor, but there was no burden on the plaintiff to show the product involved in the accident-producing event was not subjected to any substantial alteration in its design after leaving the hands of the product supplier. Although some other jurisdictions place this burden on a plaintiff, Texas does not. Allied's point of error three concerning plaintiff's burden to show no misuse or alteration is therefore overruled.

## MISUSE

■ The defense of misuse may be asserted after a product is found to be unreasonably dangerous, and the defect is found to be a producing cause of the injury.

■ According to *Hopkins, supra,* there are three elements, all of which are necessary to establish the misuse defense: (1) the defendant must establish that the particular misuse of the product was neither intended nor reasonably foreseeable from the manufacturer's or supplier's perspective; (2) the defendant must establish that the product user could reasonably foresee an injury occurring as a result of the misuse; and (3) the misuse was a producing cause of the injury. If a jury finds these elements are present, it must then determine the percentage by which these concurring causes proximately contributed to the accident and resulting injury. *Id.* at 351. Sales, *Comparative Causation in Strict Tort Liability: One Perspective of Duncan v. Cessna Aircraft Corp.*, 3

STATE BAR LITIGATION SECTION REPORT 4 (1984).

Allied pled the affirmative defense of misuse and sought to establish during the course of the trial that the grinder had been misused in a number of ways: (1) the employer had cut a slot in the right guard; (2) the work rest and the eye shield had been removed; (3) the flanges (the purpose being to grip the side of the grinding wheel and provide for an even distribution of pressure) were not clean and flat; (4) plaintiff jammed the drill bit between the grinding wheel and guard; (5) plaintiff had ground on the side of the wheel; and (6) plaintiff had run the grinder without checking the r.p.m.'s.

■ As to alterations, McKee, plaintiff's employer, testified that he was responsible for removing the eye shield and the work rest and that he cut the slot in the guard.[3] In *Blackwell Burner Co. v. Cerda*, 644 S.W.2d 512, 520 (Tex.App.—San Antonio, 1982, writ ref'd n.r.e.), this Court quoted from the *Hopkins* decision, 548 S.W.2d at 351: "We reject misuse as a defense where the product is dangerous for its foreseeable use and the danger is a producing cause of the injury of a bystander or a user who has not himself made some unforeseeable use of the product."

■ The misuse defense, at the time of this trial, could nevertheless be applicable even though a supplier was liable for injuries resulting after it placed a dangerous product into the stream of commerce. Products liability was not meant to take the place of insurance, and the supplier should not be required to reimburse the plaintiff for that portion of damages caused by a use of the product that the supplier would not have foreseen and that plaintiff should have foreseen would create or increase the attendant danger. Reduction of the plaintiff's recovery should be ordered where the misuse is a concurring

---

3. We do not address the question of alteration by the employer in this case. *See Herrera v. FMC Corp.,* 672 S.W.2d 5, 8 (Tex.App.—Houston [14th Dist.] 1984, no writ). We recognize that in a case where misuse is a defense and the employer is a worker's compensation subscriber, the employer's conduct may not be considered to reduce the percentage of a defendant's liability.

proximate cause of the damaging event. *General Motors Corp. v. Hopkins, supra,* 548 S.W.2d at 351.

 Subsequent to the accident, tests were conducted which indicated the grinding wheel broke as plaintiff operated the grinder at 3650 r.p.m.'s; however, the instructions accompanying the grinding wheel specified the wheel should be run at no more than 2480 r.p.m.'s. It is undisputed that no instructions accompanied the grinder nor was any nameplate attached to the grinder itself to indicate the maximum speed that an attached grinding wheel should be capable of rotating. Since neither plaintiff nor his employer received that kind of warning, such a marketing defect alone would suffice to make this product defective. *Blackwell Burner Co., supra,* at 516. *Compare Lopez v. Aro Corp.,* 584 S.W.2d 333, 336 (Tex.Civ.App.— San Antonio 1979, writ ref'd n.r.e.) (instruction booklet without warning on side of grinder sufficient to warn user).

Allied presented evidence through its expert, Dr. Billy H. Amsted, a consulting engineer, that the flanges on the grinding wheel were not clean, explaining that the excessive buildup interfered with the function of the flanges to distribute the weight uniformly over a greater part of the wheel. A buildup of any kind would cause undue stress on the wheel which was attached to the grinder. This was a violation of Underwriters, OSHA, and ANSI standards. In calculating the torque, Amsted said if twenty pounds were placed on the wheel at four and one-half inches out, the torque (force) would be 450 pounds. This would be equivalent to putting 450 pounds on one side of the wheel when there is dirt buildup on the wheel. This is the kind of stress which would cause the wheel to break in half (which it did). Excess buildup on the wheel results in uneven load distribution.

There was testimony from other experts indicating that when a grinding wheel breaks from overspeed, it normally breaks into many pieces. It was stated that when a wheel breaks in half, as in this case, that it may not be from overspeed alone. There was testimony from Amsted that he found evidence of "jamming" of the bit between the grinding wheel and the guard. He could not say whether the breaking of the grinding wheel was caused by jamming or dirty flanges, but he based his conclusions that either could be a cause upon the type of fracture (in half) of the wheel. Also he stated the removal of the tool (work) rest was a substantial alteration, stating if it was impossible to use the work rest, "they" were using the wrong kind of grinder. This last might be a possible misuse by plaintiff, not because of his employer's initial removal of the work rest, but because plaintiff's demonstrated necessity to work without the work rest, there being no room for both the drill bit and the work rest, indicated the wrong kind of grinder was used with this particular grinding wheel and 25 pound drill bit. He further stated there was some evidence that plaintiff had ground on the outside of the wheel, and that may have been a cause of the damaging event. Another expert testified there was some evidence of "improper mounting, premounting damage, and excessive side pressure" by the plaintiff.

 While it is accepted that if the injury resulting from a foreseeable misuse of the product is one which an adequate warning would likely prevent, then such misuse is not a defense in an action based on the failure to give such a warning, *Bituminous Casualty Corp. v. Black & Decker Manufacturing Co.,* 518 S.W.2d 868, 875 (Tex.Civ.App.—Dallas 1974, writ ref'd n.r.e.) (Citations omitted), in the present case there was some evidence that other possible unforeseeable concurring producing causes existed. Thus the question arises as to concurring producing causes and their unforeseeability. The same rationale applies as to the proven design defect in the grinder guard. We emphasize that the grinding wheel as used and attached to the grinder was a necessary and integral part of the working unit. Without the wheel in operation to grind the drill bit, the damaging event would not have occurred. Therefore, viewing the grinder as

if it existed and operated alone does not encompass the whole working unit.

Even if it is argued the evidence is factually insufficient to support an affirmative answer to an opponent's issue, this furnishes no basis for refusal to submit the issue. *Clarostat Manufacturing, Inc. v. Alcor Aviation, Inc.*, 544 S.W.2d 788, 791 (Tex.Civ.App.—San Antonio 1976, writ ref'd n.r.e.). Only when there is no evidence to support it may the trial court decline to submit a relevant issue. *Garza v. Alviar*, 395 S.W.2d 821, 824 (Tex.1965). There is some evidence, more than a scintilla, if the evidence furnishes some reasonable basis for differing conclusions by reasonable minds as to the existence of the vital fact. *Martinez v. Delta Brands, Inc.*, 515 S.W.2d 263, 265 (Tex.1974); *accord, Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex.1983).

Having pled the defense of misuse, Allied presented evidence of possible misuse of the grinder by plaintiff and tendered issues and instructions on misuse, as well as objections to the charge. A trial court is required to submit all material issues raised by the pleadings and evidence. TEX.R.CIV.P. 277, 279. We hold Amsted's and other experts' testimony was more than a scintilla of evidence because it furnished a reasonable basis for minds to differ as to whether there was misuse by the plaintiff which gave rise to concurring producing causes. We find the trial court should have submitted to the jury the special issues directed to that inquiry. Point of error one is sustained. In view of our disposition of the first point of error, we have no need to address points two through five regarding jury issues not submitted.

## DAMAGES

The trial court submitted this issue: (The listed sums of money were written in by the jury):

### SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence what sum of money, if any, if paid now in cash, would fairly and reasonably compensate Jose Placencio for his injuries, if any, resulting from the occurrence in question.

Consider the following elements of damage, if any, and none other:

(a) Physical pain and mental anguish in the past. $50,000.00

(b) Physical pain and mental anguish that, in reasonable probability, he will suffer in the future. $50,000.00

(c) Loss of earnings in the past. $50,000.00

(d) Loss of earnings in the future. $300,000.00

(e) Disfigurement in the past.

(f) Disfigurement in the future.

(g) Physical impairment in the past. $50,000.00

(h) Physical impairment that, in reasonable probability, he will suffer in the future. $50,000.00

(i) Medical expenses in the past. $40,000.00

(j) Medical expenses that, in reasonable probability, he will incur in the future. $60,000.00

You are to consider each element of damage separately, so as not to include damages for one element in any other element.

Answer in dollars and cents, if any.

ANSWER: $650,000.00

Allied filed a motion for judgment n.o.v. and Coast, a motion to reform the judgment based on jury answers written beside each damage element that was submitted. However, it is plain the jury found that the plaintiff ultimately incurred $650,000 in damages. The trial judge rendered a judgment in the reduced amount of $564,495. It is obvious the trial judge reduced the award for past medical expenses from $40,000 to the stipulated figure, $12,995 and reduced the award for purported future medical expenses by a total of $85,505 leaving the judgment total of $564,495.

Coast and Allied both argue the evidence is legally and factually insufficient to justify the amount awarded to plaintiff, even in

the reduced amount of the judgment. Plaintiff, on the other hand, argues that the full jury verdict should be reinstated.

■ The powers of a trial court and a court of appeals to determine the propriety of a remittitur are governed by the same standard. *Highlands Insurance Co. v. Baugh,* 605 S.W.2d 314, 319 (Tex.Civ.App.—Eastland 1980, no writ).

■ TEX.R.CIV.P. 440 governs remittitur by a court of appeals. If the court is of the opinion that the verdict and judgment of the trial court is excessive, it may suggest remittitur of the excess and if remittitur is not filed, the appellate court may reverse the trial court's judgment. *Missouri-Kansas-Texas Railroad Co. v. Pierce,* 519 S.W.2d 157, 159 (Tex.Civ.App.—Austin 1975, writ ref'd n.r.e.). In determining whether a verdict is excessive this Court must consider the evidence in the light most favorable to the award. *Green v. Rudsenske,* 320 S.W.2d 228, 235 (Tex. Civ.App.—San Antonio 1959, no writ). An appellate court will not disturb a jury award on the grounds of excessiveness if there is any evidence to sustain the award. *J.A. Robinson Sons, Inc. v. Ellis,* 412 S.W.2d 728, 743 (Tex.Civ.App.—Amarillo 1967, writ ref'd n.r.e.).

■ We observe that it is only the ultimate figure of damages that this court may consider, not the unsolicited write-ins of the jury. TEX.R.CIV.P. 300, 301. We have examined the record and find that the damages awarded to plaintiff in view of the injuries incurred are not excessive. We therefore do not suggest remittitur, pursuant to TEX.R.CIV.P. 440.

■ The trial court could also have ordered remittitur upon penalty of a new trial if it thought the sum total excessive. TEX.R.CIV.P. 315. The trial court chose to render judgment in a reduced amount, substituting its findings for that of the jury, and establishing the written-in itemized amounts as part of the verdict of the jury. A judge may not disregard answers to material issues and substitute findings for that of the jury. *Highlands Insurance*

*Co., supra,* at 319. 4 R. McDONALD, *supra,* at § 17.28. We therefore overrule Allied's points nine and ten and Coast's points four through six. We would grant plaintiff's cross-point, reinstating damages in the amount of $650,000 if the cause were not otherwise reversed.

Accordingly, the judgment of the trial court is reversed and the case is remanded for trial.